UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BANNER HEALTH, )<br>)<br>  Plaintiff, )<br>)<br>  v. )<br>)<br>MICHAEL O. LEAVITT, )<br> in his official capacity as Secretary, Department )<br> of Health and Human Services, )<br>)<br>  Defendant. ) | No. 1:07-cv-1614-RBW |

**DEFENDANT'S NOTICE OF FILING STATEMENT OF MATERIAL
FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT
AND RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Please take notice that defendant, Michael O. Leavitt, in his official capacity as Secretary, U.S. Department of Health and Human Services, is hereby filing the following Statement of Material Facts in Support of his Motion for Summary Judgment, together with Defendant's Response to Plaintiff's Statement of Material Facts. Undersigned counsel failed to attach these documents to Defendant's Combined Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment.

Dated: February 20, 2008

        Respectfully submitted,

        JEFFREY S. BUCHOLTZ
        Acting Assistant Attorney General

        KENNETH L. WAINSTEIN
        U.S. Attorney for the District of Columbia

        SHEILA LIEBER
        Deputy Director, Federal Programs Branch

        <u>/s/ James D. Todd, Jr.</u>
        JAMES D. TODD, JR., Senior Counsel
        U.S. DEPARTMENT OF JUSTICE
        Civil Division, Federal Programs Branch
        20 Massachusetts Avenue N.W.
        Washington, DC 20530
        (202) 514-3378
        (202) 616-8470 (fax)
        *james.todd@usdoj.gov*
        Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2008, a copy of the foregoing document was filed electronically via the Court's ECF system, through which a notice of the filing will be sent to:

CHRISTOPHER L. KEOUGH, Esq.
Vinson & Elkins, L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, DC 20004
(202) 639-6745
(202) 879-8945 fax
*ckeough@velaw.com*

STEPHANIE A. WEBSTER, Esq.
Vinson & Elkins, L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, DC 20004
(202) 639-6634
(202) 879-8832 fax
*swebster@velaw.com*
Attorneys for Plaintiff

<u>/s/ James D. Todd, Jr.</u>
JAMES D. TODD, JR.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BANNER HEALTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:07-cv-1614-RBW |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| in his official capacity as Secretary, Department | ) |
| of Health and Human Services, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Pursuant to LcvRs 7.1(h) and 56.1, defendant, Michael O. Leavitt, in his official capacity as Secretary, U.S. Department of Health and Human Services, submits the following Statement of Material Facts in Support of his Motion for Summary Judgment:

1. Prior to 1982, Arizona was the only State in the nation that had declined Federal Medicaid funds for low-income women, children, aged, blind, and the disabled. AR 228. Rather than accepting Federal funds for health care, the State relied on individual counties to fund and provide indigent care. *Id.*

2. In 1981, the State legislature created the Arizona Health Care Cost Containment System (hereafter "AHCCCS" and pronounced "Access"), which became effective in 1982. *See* Laws 1981, 4th S.S., Ch. 1, § 11, *codified at* Ariz. Rev. Stat. §§ 36-2901 *et seq.* (1999).

3. Rather than rely on a fee-for-service payment system, AHCCCS pays public and private managed care health plans an up-front monthly capitation payment on behalf of its enrollees. AR 228. The managed care plans are then responsible for managing all covered

health care services provided to their AHCCCS enrollees. *Id.  See also* Ariz. Rev. Stat. § 26-2904(A) (1999).

4. At all times relevant to this litigation, AHCCCS provided health care benefits to individuals enrolled in healthcare programs paid for exclusively by the State. Those programs included individuals eligible for the three State-funded groups at issue in this litigation: the Medically Needy/Medically Indigent, Eligible Low-Income Children, and Eligible Assistance to Children (EAC) (collectively "State-only populations"). *See, e.g.*, AR 751-81 (reviewing State-only populations covered over the history of the program).

5. Also in 1982, the Secretary approved the first demonstration project waiver pursuant to 42 U.S.C. § 1315(a)(1), which allowed Arizona to join and participate in the federal Medicaid program solely through the demonstration project waiver. AR 14-15; 228. Under the waiver, AHCCCS was permitted to require Medicaid enrollees to join managed care health plans and to be subject to nominal cost sharing for mandatory medical services. AR 229.

6. AHCCCS relies on the same managed care health plans to deliver acute care services to both State-only and Medicaid-eligible populations. AR 233.

7. For each Medicaid enrollee, AHCCCS receives Federal funds to reimburse a portion of each Medicaid dollar spent by AHCCCS. AR 235.

8. AHCCCS did not obtain a waiver for any of its State-funded populations. AR 235. AHCCCS is funded by a combination of Federal, State, and county funds. *Id.*

9. AHCCCS maintains separate eligibility criteria for its Medically Needy/Medically Indigent and Eligible Children programs, and for its Medicaid programs. Ariz. Rev. Stat. § 36-2901(4)(a-c, h) (1999).

10. As part of its demonstration project waiver, AHCCCS makes Medicaid (rather than Medicare) DSH payments to participating hospitals. *See, e.g.*, AR 345. AHCCCS calculates Medicaid DSH payments in one of two ways: (i) it calculates a hospital's Medicaid DSH payment based on the hospital's Medicaid-eligible patient days; or (ii) it calculates a hospital's Medicaid DSH payment based on the care provided to the hospital's low-income patients who receive care because they are eligible for Medicaid, State-, or County-funded programs, plus the cost of charity care the hospital provides. *Id.* Hospitals are paid the larger of the two calculations. *See, e.g.,* AR 338.

11. Like the rest of AHCCCS's Medicaid expenditures, the agency receives Federal matching payments for its Medicaid DSH adjustment payments. AR 64, 65, 355.

12. Plaintiff Banner Health System operates four short-term acute care hospitals in or near Phoenix, Arizona: Good Samaritan, Desert Samaritan, Thunderbird Samaritan, and Maryvale Samaritan. AR 36, 42, 61.

13. Good Samaritan qualified as a disproportionate share hospital and received Medicare DSH payments from 1986 through 1989 that erroneously included State-only patients days. AR 82.

14. Good Samaritan also received interim, but not final, Medicare DSH payments in 1990 through 1992 that also erroneously included State-only patient days. AR 82, 135-36 (Tr.105:15 - 109:6).

15. Desert Samaritan, Thunderbird Samaritan, and Maryvale Samaritan qualified for Medicare DSH payments beginning in 1991. AR 82.

16. The present dispute centers around the decision of Blue Cross Blue Shield of Arizona, acting as the Medicare Fiscal Intermediary to include only Medicaid-eligible patient

days in the hospitals' Medicare DSH adjustments for cost years 1991 and 1993 through 1999. AR 15.

17. On February 24, 1992, the Secretary informed the hospitals that, for cost reporting periods beginning in 1990, their Medicare DSH payments under the Medicaid proxy would include those days for which the hospitals' patients were eligible for Medicaid, and that interim Medicare DSH payments would "be revised to reflect the inclusion of Title XIX days only." AR 456.

18. In calculating the hospitals' Medicare DSH adjustment for each year at issue, the Intermediary included only those days in which the hospitals' patients were eligible for Medicaid, but did not include days in which the hospitals' patients were eligible for health care coverage under State-only programs. AR 69.

19. Although the hospitals appealed their Notices of Program Reimbursement for each cost year at issue, they did not seek inclusion of these State-only days until they amended their appeals in 2000–after the Secretary announced the hold harmless policy in Program Memorandum A-99-62–to include the issue of the Intermediary's use of only Medicaid-eligible patient days in the hospitals' Medicare DSH adjustments. AR 70.

Dated: February 20, 2008

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

KENNETH L. WAINSTEIN
U.S. Attorney for the District of Columbia

SHEILA LIEBER
Deputy Director, Federal Programs Branch

/s/ James D. Todd, Jr.
JAMES D. TODD, JR., Senior Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC 20530
(202) 514-3378
(202) 616-8470 (fax)
*james.todd@usdoj.gov*
Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BANNER HEALTH, )<br>)<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>MICHAEL O. LEAVITT, )<br> in his official capacity as Secretary, Department )<br> of Health and Human Services, )<br>)<br>    Defendant. ) | No. 1:07-cv-1614-RBW |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Pursuant to LcvRs 7.1(h) and 56.1, defendant, Michael O. Leavitt, in his official capacity as Secretary, U.S. Department of Health and Human Services, submits the following Response to Plaintiff's Statement of Material Facts submitted in support of its Motion for Summary Judgment:

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed. At all times relevant to this litigation, AHCCCS provided health care benefits to individuals who were eligible for "medical assistance under a State plan approved [by the Secretary of Health and Human Services] under Title XIX [the Medicaid statute]" as well as to individuals enrolled in healthcare programs developed and paid for exclusively by the State. Those programs included individuals eligible for the three State-funded groups at issue in this litigation: the Medically Needy/Medically Indigent, Eligible Low-Income Children, and Eligible Assistance to Children (EAC) (collectively "State-only populations"). *See, e.g.*, AR 751-81 (reviewing State-only populations covered over the history of the program). In 1982, the

Secretary approved the first demonstration project waiver pursuant to 42 U.S.C. § 1315(a)(1), which allowed Arizona to join and participate in the federal Medicaid program solely through the demonstration project waiver. AR 14-15; 228. AHCCCS did not obtain a Medicaid waiver for any of the services provided to its State-created and exclusively State-funded populations (i.e., "State-only" programs). AR 235. AHCCCS maintains separate eligibility criteria for its Medically Needy/Medically Indigent, Eligible Children, and Medicaid programs. Ariz. Rev. Stat. § 36-2901(4)(a-c, h) (1999).

    5. Undisputed.

    6. Immaterial but undisputed.

    7. Immaterial but undisputed.

    8. Immaterial but undisputed.

    9. Disputed. AHCCCS did not obtain a waiver for any of its State-funded populations. AR 235. The waiver granted by the Secretary allowed Arizona to require all of its Medicaid eligible individuals to enroll in slected managed care health plans. *Id.*

    10. Undisputed.

    11. Immaterial but undisputed. AHCCCS maintains separate eligibility criteria for its Medically Needy/Medically Indigent and Eligible Children programs, and for its Medicaid programs. Ariz. Rev. Stat. § 36-2901(4)(a-c, h) (1999).

    12. Disputed. AHCCCS does not operate a single program. *See* Ariz. Rev. Stat. § 36-2903.01(B)(5) (1999) (authorizing AHCCCS to apply for and accept federal funds available under Title XIX of the Social Security Act "to be used *only* for the support of persons defined as eligible pursuant to [T]itle XIX of the [S]ocial [S]ecurity [A]ct") (emphasis added). Although AHCCCS managed and paid for both the State-only and Arizona Medicaid programs, the State

did not obtain a waiver for any of its State-only programs. AR 235. In addition, plaintiff uses the term "medical assistance;" if plaintiff means to refer to Medicaid benefits, such benefits were not provided to the State-only programs. Ariz. Rev. Stat. § 36-2903.01(B)(5) (1999) (authorizing AHCCCS to apply for and accept federal funds available under Title XIX of the Social Security Act to "be used *only* for the support of persons defined as eligible pursuant to [T]itle XIX of the [S]ocial [S]ecurity [A]ct") (emphasis added).

      13. Immaterial but undisputed.

      14. Immaterial but undisputed.

      15. Immaterial but undisputed. As part of its demonstration project waiver, AHCCCS makes Medicaid (rather than Medicare) DSH payments to participating hospitals. *See, e.g.*, AR 345. AHCCCS calculates Medicaid DSH payments in one of two ways: (i) it calculates a hospital's Medicaid DSH payment based on the hospital's Medicaid-eligible patient days; or (ii) it calculates a hospital's Medicaid DSH payment based on the care provided to the hospital's low-income patients who receive care because they are eligible for Medicaid, State-, or County-funded programs, plus the cost of charity care the hospital provides. *Id.* Hospitals are paid the larger of the two calculations. *See, e.g.*, AR 338.

      16. Immaterial but undisputed. Like the rest of AHCCCS's Medicaid expenditures, the agency receives Federal matching payments for its Medicaid DSH adjustment payments. AR 64, 65, 355.

      17. Immaterial but undisputed. Like the rest of AHCCCS's Medicaid expenditures, the agency receives Federal matching payments for its Medicaid DSH adjustment payments. AR 64, 65, 355.

18. First sentence: undisputed. Second sentence: Immaterial but undisputed. Third sentence: disputed. Throughout all times relevant to this litigation, AHCCCS did not seek or receive from the Secretary a waiver for any of its State-only programs. AR 235. AHCCCS did not demonstrate that members of the State-only programs are Medicaid eligible, and Arizona State law defines populations enrolled in its State-only programs as not eligible for Medicaid. Ariz. Rev. Stat. §§ 11-297, 36-2905, 36-2905.03 (1999).

19. Immaterial but undisputed. Throughout all times relevant to this litigation, AHCCCS did not seek or receive from the Secretary a waiver for any of its State-only programs. AR 235. AHCCCS did not demonstrate that members of the State-only programs are Medicaid eligible, and Arizona State law defines populations enrolled in its State-only programs as not eligible for Medicaid. Ariz. Rev. Stat. §§ 11-297, 36-2905, 36-2905.03 (1999).

20. Undisputed.

21. Undisputed.

22. Immaterial but undisputed.

23. Disputed. On February 24, 1992, the Secretary informed the hospitals that, for cost reporting periods beginning in 1990, their Medicare DSH payments under the Medicaid proxy would include those days for which the hospitals' patients were eligible for Medicaid, and that interim Medicare DSH payments would "be revised to reflect the inclusion of Title XIX days only." AR 456.

24. Undisputed.

25. Immaterial but undisputed.

26. First sentence: Undisputed. Second sentence: Disputed. The Secretary determined that it was appropriate to hold harmless those hospitals that had already received payment for

that erroneous inclusion *or that had already raised a challenge seeking to include waiver populations in the DSH adjustment.* AR 401. The Secretary explained that "[i]n practical terms this means that [fiscal intermediaries] are not to reopen any cost reports for . . . periods beginning before January 1, 2000 to disallow the portions of Medicare DSH payments attributable to the erroneous inclusion of . . . State-only, . . . ineligible waiver or demonstration population days if the hospital received [final] payments for those days." *Id.* The Secretary instructed intermediaries, for periods prior to January 1, 2000 that remained open, "to allow these types of [erroneously-included] days . . . only in accordance with the practice followed for the hospital at issue *before October 15, 1999.*" *Id.* (emphasis added). The hold-harmless determination accommodated the reliance interest of those hospitals that might have received payments reflecting the erroneous inclusion of State-only or expansion populations in calculating the Medicare DSH adjustment. *See id.* Hospitals which had no such reliance interest were not to receive payments reflecting the inclusion of State-only or waiver populations in the DSH adjustment for years prior to January 1, 2000. *Id.* Where a hospital "did not receive any payment based on the erroneous inclusion of . . . State-only, . . . waiver or demonstration population days for cost reports that were settled before October 15, 1999," *and* where the hospital did not "*appeal . . . on this issue*," the Secretary would not make hold-harmless payments. *Id.* (emphasis added).

    27.  Disputed. The hold-harmless determination accommodated the reliance interest of those hospitals that might have received payments reflecting the erroneous inclusion of State-only or expansion populations in calculating the Medicare DSH adjustment. *See id.* Hospitals which had no such reliance interest were not to receive payments reflecting the inclusion of State-only or waiver populations in the DSH adjustment for years prior to January 1, 2000. *Id.*

28. Disputed.  Where a hospital "did not receive any payment based on the erroneous inclusion of . . . State-only, . . . waiver or demonstration population days for cost reports that were settled before October 15, 1999," *and* where the hospital did not "*appeal . . . on this issue*," the Secretary would not make hold-harmless payments.  *Id.* (emphasis added).

29. Undisputed.

30. Undisputed.

31. Undisputed.

Dated:  February 20, 2008

                                      Respectfully submitted,

                                      JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

KENNETH L. WAINSTEIN
U.S. Attorney for the District of Columbia

SHEILA LIEBER
Deputy Director, Federal Programs Branch

/s/ James D. Todd, Jr.
JAMES D. TODD, JR., Senior Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC 20530
(202) 514-3378
(202) 616-8470 (fax)
*james.todd@usdoj.gov*
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2008, a copy of the foregoing document was filed electronically via the Court's ECF system, through which a notice of the filing will be sent to:

CHRISTOPHER L. KEOUGH, Esq.
Vinson & Elkins, L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, DC 20004
(202) 639-6745
(202) 879-8945 fax
*ckeough@velaw.com*

STEPHANIE A. WEBSTER, Esq.
Vinson & Elkins, L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, DC 20004
(202) 639-6634
(202) 879-8832 fax
*swebster@velaw.com*
Attorneys for Plaintiff

/s/ James D. Todd, Jr.
JAMES D. TODD, JR.