**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BANNER HEALTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:07-cv-1614 (RBW) |
| ) | |
| MICHAEL O. LEAVITT, ) | |
| Secretary, United States Department ) | |
| of Health and Human Services, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
STATEMENT OF MATERIAL FACTS**

The plaintiff Hospitals respond as follows to the Defendant's Statement of Material Facts in Support of His Motion for Summary Judgment ("Def. Stmt."):

1. Undisputed.

2. This statement is incomplete, and Plaintiff disputes it, insofar as it omits that the State statutes that created and govern the Arizona Health Care Cost Containment System ("AHCCCS") include the three low-income eligibility groups at issue in the AHCCCS program and specify the eligibility criteria for each of those three groups as well the other eligibility groups covered by AHCCCS. *See* Ariz. Rev. Stat. Ann. § 36-2901 *et seq.*

3. This statement is incomplete, and Plaintiff disputes it, insofar as it omits that AHCCCS also provided direct Medicaid payments to hospitals that serve a disproportionate share of low-income patients for services to those low-income patients. Defendant concedes that these "Medicaid expenditures," called ('Medicaid DSH')

payments, are "based on the care provided to [a] hospital's low-income patients who receive care because they are eligible" for benefits under the AHCCCS program, including individuals in the three low-income AHCCCS eligibility groups at issue here. *See* Defendant's Memorandum in Support of His Combined Motion For Summary Judgment and Opposition To Plaintiff's Motion For Summary Judgment ("Def. Mem.") at 15 ("Medicaid DSH payments" are "Medicaid expenditures" that are "based on the care provided to the hospital's low-income patients who receive care because they are eligible for Medicaid, State-, or County-funding programs."); Def. Stmt. ¶¶ 10, 11 (same); Plaintiff's Statement of Material Facts Not in Genuine Dispute ("Pl. Stmt.") ¶ 15 (Arizona's Medicaid DSH payments are "based on a hospital's utilization by all AHCCCS recipients, including the three groups of recipients at issue here."), ¶¶ 16, 17; Defendant's Response to Plaintiff's Statement of Material Facts ("Def. Resp.") ¶¶ 15, 16, 17. There is no dispute that each of the Plaintiff hospitals received these Medicaid DSH payments, and those "Medicaid expenditures" were funded with Federal matching funds. *See* Pl. Stmt. ¶¶ 16, 17; Def. Resp. ¶¶ 16, 17; Def. Mem. at 15. Moreover, there can be no genuine dispute that these Medicaid expenditures were for the care provided to the low-income patients in the three AHCCCS eligibility groups at issue because: (i) the calculation of these Medicaid DSH payments was "based on the care provided" to individuals in the three AHCCCS groups at issue (Def. Mem. at 15; Def. Stmt. ¶ 10); and; (ii) a hospital could receive that Medicaid payment from AHCCCS even if the hospital treated no AHCCCS patients other than those individuals who were in the three AHCCCS eligibility groups at issue (Administrative Record ("AR") 132-34, 175).

4.     Plaintiff disputes the allegation in the first sentence of this paragraph of Defendant's Statement that AHCCCS provided health care benefits to individuals enrolled in health care programs paid for exclusively by the State.  Defendant cites no record evidence in support of that sentence, and it is contradicted by the undisputed facts and record evidence discussed above (*see supra* ¶ 3).  Plaintiff admits that, during the periods at issue in this case, AHCCCS provided health care benefits to individuals in the AHCCCS eligibility categories called "Medically Needy/Medically Indigent," "Eligible Low-Income Children," and "Eligible Assistance to Children," and admits that the State was one source of funding for benefits to those individuals.  Plaintiff disputes Defendant's unsubstantiated allegations that those benefits were "paid for exclusively by the State" and that the individuals were in "State-only populations."   Those disputed allegations are contradicted by the undisputed facts and record evidence discussed above (*supra* ¶ 3) and are not supported by the record evidence cited in Defendant's Statement (AR 751-81).  The "Enrollment" tables on the portion of the record cited in Defendant's Statement (AR 751-81) for the period at issue here (1/1/91 to 12/31/99) show that these three AHCCCS eligibility populations (shown as MN/MI, EAC, and ELIC) received assistance from and were enrolled in AHCCCS.  *See* AR 762 (bottom; 10/1/90 – 9/30/91), 764 (bottom; 10/1/91 – 9/30/92), 766 (middle; 10/1/92 – 9/30/93), [10/1/93 – 9/30/94 missing from Intermediary Exhibit in the AR], 769 (bottom; 10/1/94 – 9/30/95), 771 (bottom; 10/1/95 – 9/30/96), 773 (middle; 10/1/96 – 9/30/97), 775 (top; 10/1/97 – 9/30/98), 776 (bottom; 10/1/98 – 9/30/99), 778 (middle; 10/1/99 – 9/30/00).  The Secretary's Provider Reimbursement Review Board ("PRRB" or "Board") found, and the Secretary's final decision did not refute the Board's finding, that all AHCCCS recipients,

including the individuals in the three eligibility populations at issue, received medical assistance through the single AHCCCS program.  *See* AR 35; AR 130-31; Complaint ¶ 59; Answer ¶ 59; *see also supra* ¶¶ 2, 3.  The Secretary's Board found, and the Secretary's final decision did not refute the Board's finding, that AHCCCS funded the capitation payments made to the managed care plans and Medicaid DSH payments made directly to hospitals with all of the funding the program receives from Federal, State and local government sources, and this results in a *de facto* sharing by all of these government sources of all the costs of the program.  AR 40.

5.     Plaintiff admits that the Secretary first approved Arizona's Medicaid demonstration project waiver pursuant to 42 U.S.C. § 1315 in 1982, and that the waiver permits AHCCCS to require enrollees to join managed care health plans and pay nominal cost sharing for mandatory medical services, but otherwise denies the allegations in this paragraph, which are unsupported by the record evidence cited in Defendant's Statement.

6.     Plaintiff admits that AHCCCS delivers acute care services through the same managed care plans for all AHCCCS enrollees, but denies Defendant's unsubstantiated allegation that AHCCCS covers or relies on managed care health plans to deliver services to "State-only populations."  The portion of the record cited in Defendant's Statement (AR 233) does not support Defendant's allegation that AHCCCS provides services to "State-only" populations.   Moreover, this allegation is contradicted by the undisputed facts and record evidence discussed above (*see supra* ¶¶ 3, 4).

7.     Plaintiff admits that AHCCCS expenditures are Medicaid expenditures, and admits that AHCCCS received Federal matching funds for some expenditures on AHCCCS enrollees, but disputes that AHCCCS receives Federal matching for "each

Medicaid dollar spent." This evidence is unsupported by the record evidence Defendant cites (AR 235), which states that "CMS pays a federal match to the state based on an annual matching percentage established in federal regulation." It is undisputed that "[t]he State did not seek or receive Federal funding specifically for the capitated payments made to AHCCCS managed care plans for AHCCCS recipients in the disputed eligibility groups." Pl. Stmt. ¶ 18; Def. Resp. ¶ 18. It is also undisputed that, as the Secretary's Board found, "AHCCCS funds the capitation payments made to the Medicaid managed care plans and other Medicaid DSH payments made directly to hospitals with all of the funding the program receives from Federal, State and local government sources, and this results in a *de facto* sharing of all the costs of the program." *See id.*; PRRB Dec., AR 40. Moreover, as discussed above (*supra* ¶ 3), there is no dispute that each of the Plaintiff hospitals received Medicaid DSH payments for the care provided to the individuals in the three AHCCCS eligibility groups at issue and those "Medicaid expenditures" were funded with Federal matching funds.

8. Plaintiff disputes the unsubstantiated allegations set forth in the first sentence of this paragraph of Defendant's Statement. The portion of the record cited in Defendant's Statement (AR 235) does not support these allegations. The parties stipulated below, the Secretary's Board found, and the Secretary's final decision below did not refute the Board's finding, that AHCCCS is Arizona's Medicaid program. Stipulations ¶ 4, AR 192; AR 40; Complaint ¶¶ 2, 50; Answer ¶¶ 2, 50. As the Board found below, instead of having a traditional Medicaid program, the State of Arizona operates its entire Medicaid program pursuant to a waiver approved by the Secretary, and the AHCCCS program is the State Medicaid Plan. AR 40. Further, the portion of the

record cited in Defendant's Statement (AR 235) contains the "Program Funding" section of a document called "2002 AHCCCS Overview" (AR 226), and the page cited by Defendant says nothing about any AHCCCS eligibility groups being part of a separate or "State-funded" program. Indeed, that page says that the single program, AHCCCS, "is funded by a combination of federal, state and county funds." AR 235. Accordingly, Plaintiff agrees with Defendant's statement, in the second sentence of this paragraph of his Statement, that AHCCCS is funded by a combination of Federal, State, and county funds.

   9. Plaintiff admits that AHCCCS maintains eligibility criteria for the three AHCCCS eligibility groups at issue, but Plaintiff denies Defendant's unsubstantiated allegations that AHCCCS had multiple "Medicaid programs" and that the eligibility criteria for the three groups at issue were "separate" from the single AHCCCS program that is Arizona's Medicaid program. *See supra* ¶¶ 2, 3, 4. Like the Federal Medicaid statute in Title XIX of the Social Security Act, *see, e.g.,* 42 U.S.C. § 1396a(a)(10)(A), Arizona State statutes establish different eligibility criteria for different eligibility categories (some overlapping) covered by AHCCCS, which is the Medicaid program in Arizona. *See, e.g.,* Ariz. Rev. Stat. Ann. § 36-2901(4)(a-c, h) (1997) (AR 301-02). The State statutes that were in effect during the 1991-1999 periods at issue required that individuals be screened for eligibility under mandatory and certain optional eligibility categories established under Title XIX of the Social Security Act before being enrolled in other AHCCCS eligibility groups, including other optional eligibility categories under Title XIX. *See, e.g.* Ariz. Rev. Stat. Ann. §§ 36-2901(4)(a-c, h), 36-2905, 36-2905.03 (1997) (the 1999 versions of the statutes cited by Defendant were only in effect for the

last several months at issue) (AR 301-02, 314-17, 324-27).  The Arizona State statutes cited in this paragraph of Defendant's Statement, in Defendant's Response to Plaintiff's Statement (Def. Resp. ¶¶ 18, 19), and in Defendant's Memorandum (at 14, 23) do not state or provide, however, that the three optional AHCCCS eligibility groups at issue were "not eligible for Medicaid."  *See* Ariz. Rev. Stat. Ann. §§ 11-297, 36-2901(4)(a-c, h), 36-2905, 36-2905.03 (1997) (AR 281-84, 301-02, 314-17, 324-27). These allegations also are unsupported by any finding of fact by the Secretary's Board or by the Secretary's delegate, the Administrator of the Centers for Medicare and Medicaid Services, in their decisions in this case.  Indeed, the Administrator's 20-page decision in this case does not cite any of the Arizona statutes now relied upon in Defendant's Statement, in his response to Plaintiff's Statement, and in his Brief.  AR 2-21.

10. Plaintiff disputes Defendant's characterization in the second and third sentences of this paragraph of his Statement regarding the calculation of the Medicaid DSH payment made by AHCCCS and of the AHCCCS groups that are included in that calculation.  Defendant's characterizations of the calculation and of the groups included in the calculation are unsupported by the portions of the record cited in Defendant's Statement.  *See* AR 345, 338.  Further, the parties stipulated below, the Secretary's Board found, the Secretary's final decision did not refute the Board's finding, and Defendant's Response does not dispute that AHCCCS calculates Medicaid DSH payments "based on a hospital's utilization by all AHCCCS recipients, including the three groups of recipients at issue here."  Pl. Stmt. ¶ 15; Def. Resp. ¶ 15.  *See* Stipulations ¶ 9, AR 193; AR 40; AR 2-21.

11. Plaintiff admits that AHCCCS' Medicaid DSH payments are Medicaid expenditures and that AHCCCS received Federal matching funds for those Medicaid payments. Plaintiff denies Defendant's allegation that AHCCCS' Medicaid DSH payments are "[l]ike the rest of AHCCCS's Medicaid expenditures" in this way, which is unsubstantiated by the record evidence cited in Defendant's Statement (AR 64, 65, 355). Plaintiff also disputes this allegation for the reasons noted above (*supra* ¶ 7).

12. It is undisputed that Plaintiff, Banner Health, is a non-profit health system that owned and operated, or is the successor in interest to the entity that owned and operated, each of the four hospitals mentioned in this paragraph. *See* Pl. Stmt. ¶ 1; Def. Resp. ¶ 1.

13. It is undisputed that the Medicare Fiscal Intermediary in Arizona included the categories of AHCCCS patient days at issue in the calculation of the Medicare DSH payments made to Arizona hospitals, including Good Samaritan, one of the Plaintiff hospitals in this case, for cost reporting periods ending prior to 1990  Pl. Stmt. ¶¶ 20, 21; Def. Resp. ¶¶ 20, 21.  For the reasons noted above, Plaintiff denies Defendant's legal conclusion that those days were "erroneously included" in the Medicare DSH payments for the reasons set forth in Plaintiff's briefs and denies Defendant's allegation that those days were for "State-only patients" for the reasons noted above (*see supra* ¶3).

14. It is undisputed that Good Samaritan also received interim Medicare DSH payments with respect to services furnished to patients in the three eligibility groups at issue from 1990 through 1992, including interim DSH payments during the 1991 cost reporting period at issue in this case. Pl. Stmt. ¶ 22; Def. Resp. ¶ 22. Plaintiff denies Defendant's legal conclusion that those days were "erroneously included" in the

Medicare DSH payments for the reasons set forth in Plaintiff's briefs and denies Defendant's allegation that those days were for "State-only patients" for the reasons noted above *(see supra* ¶ 3).

15. Undisputed.

16. Plaintiff disputes the implication in Defendant's Statement that the three AHCCCS eligibility groups at issue, which the Fiscal Intermediary ultimately decided to exclude from the hospitals' Medicare DSH payments for 1991 and 1993 through 1999, were not "Medicaid-eligible patient days." Plaintiff contends that the excluded AHCCCS recipients were Medicaid-eligible for the reasons set forth in Plaintiff's briefs. Plaintiff further disputes Defendant's characterization of the present dispute. The question presented is whether the Secretary, in his final decision below, properly determined that the three groups of AHCCCS recipients at issue should be excluded from the Medicare DSH payment calculation because they were not "eligible for medical assistance under a State plan approved under [Title XIX]." *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

17. Plaintiff denies the allegations in this paragraph, which are unsubstantiated by the record evidence cited in Defendant's Statement. The evidence shows that the Medicare Fiscal Intermediary informed Arizona hospitals in early 1992 that, for prior and future cost reporting periods ending during and after 1990, their Medicare DSH payments would include only "Title XIX" days attributable to patients for whom the State received federal funding (AR 449), and that interim Medicare DSH payments would be revised to reflect these days only (AR 456). In 1992, the Medicare Fiscal Intermediary in Arizona began to deny Medicare DSH payments retrospectively with respect to services furnished

to patients in the three AHCCCS eligibility groups at issue for cost reporting periods back to 1990. Stipulations ¶ 10, AR 193; AR 449, 456.

18.    Plaintiff disputes that the Fiscal Intermediary "included only those days in which the hospitals' patients were eligible for Medicaid, but did not include days in which the hospitals' patients were eligible for health care coverage under State-only programs." The Fiscal Intermediary excluded days for patients in the three AHCCCS groups at issue, who received medical assistance under AHCCCS, which is Arizona's Medicaid program. *See supra* ¶¶ 1-4. In addition, even if these patients had not received medical assistance under AHCCCS (which they did), they were "eligible for assistance under a State plan approved under Title XIX", because, as the Secretary's Board found (AR 40), the individuals in these three AHCCCS groups could be included in a traditional Medicaid State plan as optional Medicaid eligibility groups.

19.    Plaintiff disputes Defendant's allegation that the hospitals "did not seek inclusion" of patient days for the three AHCCCS groups at issue until 2000. The Secretary's Board found, and the Secretary's final decision did not dispute the Board's finding, that the Plaintiff hospitals included days attributable to patients in each of the three AHCCCS eligibility groups at issue in the cost reports they submitted to the Medicare program for each fiscal year at issue. AR 36. The Fiscal Intermediary denied Medicare DSH payments with respect to services furnished to those patients for each of the periods at issue. AR 36. Pursuant to the Secretary's regulations governing appeals to the PRRB, 42 C.F.R. § 405.1841(a), which permit hospitals to add issues to an appeal anytime "[p]rior to the commencement of the hearing," the Plaintiff hospitals formally amended their appeals in 2000 to challenge the Fiscal Intermediary's determinations to

exclude the AHCCCS groups at issue from the calculation of the Medicare DSH payments made to the hospitals for the periods at issue. AR 70. For the reasons stated above, Plaintiff denies the Secretary's characterization of the three AHCCCS groups at issue as "State-only days." *See supra* ¶ 3.

                                                      Respectfully Submitted,

                                                      /s/ Stephanie A. Webster
                                                      Stephanie A. Webster
                                                        DC Bar No. 479524
                                                     Christopher L. Keough
                                                       DC Bar No. 436567
                                                     VINSON & ELKINS L.L.P.
                                                     1455 Pennsylvania Avenue, N.W.
                                                     Suite 600
                                                     Washington, D.C.  20004-1008
                                                     (202) 639-6500 (phone)
                                                     (202) 639-6604 (fax)

                                                     Counsel for Plaintiff

Dated: March 18, 2008