**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BANNER HEALTH,                          )
                                        )
              Plaintiff,                )          No. 1:07-cv-1614 (RBW)
                                        )
       v.                               )
                                        )
MICHAEL O. LEAVITT,                     )
Secretary, United States Department     )
of Health and Human Services,           )
                                        )
              Defendant.                )

**PLAINTIFF'S MOTION TO STRIKE AND**
**FOR LEAVE TO FILE A SUR-REPLY TO DEFENDANT'S**
**REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Plaintiff hereby moves to strike the 18 pages of non-record evidence attached to Defendant's Reply in Support of His Motion for Summary Judgment, filed on April 16, 2008 [Doc. No. 27], and for leave to file a sur-reply to the new arguments raised in Defendant's Reply brief.[1]  Plaintiff's counsel has conferred with the Secretary's counsel, and understands that the Secretary will oppose this motion.  Points and authorities in support of Plaintiff's motion are set forth below.  Plaintiff's proposed sur-reply is attached to this motion.

---

[1] For ease of reference, Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment is referred to herein as "Pl. Mem."  Defendant's Memorandum in Support of His Combined Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment is referred to as "Def. Mem." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment is referred to as "Pl. Opp. & Reply."  And, Defendant's Reply in Support of His Motion for Summary Judgment is referred to as "Def. Reply."

## I.   MOTION TO STRIKE NON-RECORD EVIDENCE

In his briefing in this case, the Secretary has essentially disavowed the final decision below, the findings of facts made by the Secretary's own administrative review board in the proceedings below and, now, even the record compiled below.   The Secretary repeatedly disowns the facts found by the administrative board itself based on the uncontested record evidence, including the stipulations of the Intermediary, which were not overturned or contested in the Administrator's review of that decision.   *See, e.g.,* Def. Reply at 6 n.3.   He even disavows facts he admitted in his Answer to the Complaint.   *See* Def. Reply at 7.   In all of this, as pointed out in Plaintiff's last brief (Pl. Opp. & Reply at 5-10), the Secretary is attempting impermissibly to relitigate facts in this record review proceeding under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.   As if to underscore that point all the more plainly, the Secretary has now attempted to bring in new evidence through a back door channel by attaching to his Reply brief 18 pages of documents that are not part of the administrative record and that he discusses on pages 5-6 of his Reply (in footnote 1).

The Secretary's desperate attempt to introduce new evidence – as an attachment to a Reply brief no less – is clearly inappropriate.   The Court's role in this action is to review the Secretary's decision in this case based on the record evidence compiled in the proceedings before the agency, and if that decision is unsupported by substantial evidence in the record, then the Court must set it aside.   *See* 5 U.S.C. § 706(2)(E); *Biloxi Reg'l Med. Ctr. v. Bowen*, 835 F.2d 345, 348-49 & n.13 (D.C. Cir. 1987).   In an action for judicial review of final agency action under the APA, the reviewing court "sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether the [agency's decision] was factually flawed."   *See PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) (quoting *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1225 (D.C. Cir. 1993)).   Thus, it is axiomatic that

the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (*quoting Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

Accordingly, Plaintiff respectfully requests that the Court direct the Clerk to strike from the record in this case Defendant's Reply brief and its attachments originally filed on April 16, 2008. Plaintiff further requests that the Court order the Secretary to promptly re-file his Reply brief after removing the attachments and after deleting all discussion of the attachments in footnote 1 or anywhere else in that Reply brief.

## II.    PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY TO NEW ARGUMENTS RAISED IN DEFENDANT'S REPLY BRIEF

Plaintiff also seeks leave to file a sur-reply brief in order to respond to the new arguments raised in the Secretary's Reply brief filed on April 16, 2008. Plaintiff's proposed sur-reply is attached to this motion.

The standard applied by this Court for granting a leave to file a sur-reply is "whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001) (citing *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 71, 74 (D.D.C. 1998)). As demonstrated in the Plaintiff's proposed sur-reply, the Secretary's brief raises several new arguments that clearly lack merit and warrant response, including:

- the Secretary is not bound by facts admitted in his Answer

- the Secretary is not bound by the factual findings of the Secretary's Provider Reimbursement Review Board or by stipulated facts that were all reviewed but not overturned by the Administrator in the final decision below

- there is no inconsistency between the Secretary's position in this case and the agency's interpretation of "medical assistance" in a 2002 letter to all

State Medicaid Directors, which Plaintiff discussed in its Complaint and opening brief, but which the Secretary did not mention in his first brief

· the Administrator's denial of a hold harmless payment to Plaintiff under Program Memorandum A-99-62 is supported by later guidance that the agency gave to its Medicare fiscal intermediaries in an unpublished "Questions and Answers" document that was not discussed in the Secretary's first brief, and was not listed in the Federal Register as required by a provision of the Medicare statute that the Court of Appeals recently construed and applied against the Secretary in another case

Because the Secretary withheld those arguments from his first brief, the existing briefing does not adequately address them for the benefit of the Court, and Plaintiff, in particular, has not had a full and fair opportunity to take issue with them. Thus, Plaintiff respectfully requests this Court grant its motion for leave to file the sur-reply attached to this motion.

## III.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion to strike and for leave to file the sur-reply accompanying this motion. A proposed order is attached.

Respectfully submitted,

/s/ Stephanie A. Webster
Stephanie A. Webster
  DC Bar No. 479524
Christopher L. Keough
  DC Bar No. 436567
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
(202) 639-6500 (phone)
(202) 639-6604 (fax)

Counsel for Plaintiff

April 22, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BANNER HEALTH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:07-cv-1614 (RBW) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL O. LEAVITT, | ) | |
| Secretary, United States Department | ) | |
| of Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S SUR-REPLY TO DEFENDANT'S
REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Recognizing the fatal weaknesses of the final agency decision from which the Plaintiff hospitals seek relief, the Secretary simply refuses to engage the facts and issues presented in this case. He all but ignores the agency's final decision in this case, even arguing in his Reply that the decision in this case should be upheld based on another decision he issued in consideration of the record in another case.[1] Def. Reply at 9. He disavows nearly all of the findings of facts in the proceedings below, including the undisputed facts that were stipulated by his contracted agent in the administrative proceedings before his own review board, suggesting that his agent's stipulations were "misrepresentations" and ignoring the fact that these stipulations were reviewed but *not overturned* by the Administrator of the agency in his final decision in this case. Def. Reply at 6 n.3. Indeed, the Secretary's Reply even attempts to

---

[1] For ease of reference, Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment is referred to herein as "Pl. Mem." Defendant's Memorandum in Support of His Combined Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment is referred to as "Def. Mem." Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment is referred to as "Pl. Opp. & Reply." And, Defendant's Reply in Support of His Motion for Summary Judgment is referred to as "Def. Reply."

disown the facts the Secretary himself admitted in his Answer to the Complaint, s*ee* Def. Reply at 7, and to create a new record in place of the one compiled in the proceedings before his agency, by attaching 18 pages of non-record evidence to the Reply brief filed on April 16, 2008.  And, in a final desperate measure, the Secretary's Reply now raises several new arguments not asserted in his prior memorandum in support of his motion for summary judgment and opposition to Plaintiff's motion for summary judgment.  With respect to those new arguments, Plaintiff submits the following sur-reply.

**I.    IN THE PROCEEDINGS BELOW, THE BOARD FOUND AND THE SECRETARY DID NOT DISTURB THE BOARD'S FINDING THAT AHCCCS GROUPS AT ISSUE ARE PART OF THE SINGLE AHCCCS PROGRAM THAT IS THE MEDICAID PROGRAM IN ARIZONA**

In his Reply brief, the Secretary argues for the first time that he is not bound by certain facts that were found by the Secretary's own Provider Reimbursement Review Board ("PRRB" or "Board") in its decision below, or were admitted in the Secretary's Answer to the Complaint in this case, or were stipulated in the proceedings before the Board and were reviewed but not overturned by either the Board or the Administrator.  As shown below, these new arguments are not supported by the record evidence or any legal authority.

**A.    PRRB Findings**

In his Reply brief (at 4), the Secretary asserts for the first time that he "is not bound by the finding of the Board that the Secretary's approval of Arizona's State plan . . . 'include[d] all the AHCCCS programs and sub-programs.'"  The Secretary argues that he is not bound by that finding "*because the Secretary reversed the Board's finding.*"  (Emphasis in original; internal citation to Plaintiff's brief quoting the Board decision (AR 40) omitted).  As shown below, this position is unfounded.

In support of his new argument, the Secretary says that the Administrator, in his final decision below, "reversed the Board's finding that the populations at issue were eligible for Medicaid." Def. Reply at 4. It is true that the Administrator concluded that the Arizona Health Care Cost Containment System ("AHCCCS") groups at issue were not eligible for Medicaid (otherwise this matter would not be before the Court). But in reaching that legal conclusion, the Administrator did not overturn or even question the Board's factual finding that the Secretary's approval of Arizona's State plan included all the AHCCCS programs and sub-programs. The Administrator concluded that the AHCCCS patients at issue are not "eligible for Medicaid" for a different reason, one which – contrary to law – focused exclusively on the extent of Federal matching payments made for the services furnished to the three low-income AHCCCS groups at issue. *See* Pl. Mem. at 18-22; Pl. Opp. & Reply at 10-12.

To support his repudiation of the Board findings, the Secretary's Reply (at 4) also notes language in the Administrator's decision describing that the State has different eligibility requirements for each group covered under the AHCCCS program, including each of the three groups at issue here. It is true that the Administrator made this statement in his decision below, but this observation did not disturb, and is not inconsistent with, the Board's finding that the Secretary's approval of Arizona's State plan included all the AHCCCS programs and sub-programs.

The Secretary's Reply (at 4) also notes the Administrator's statement that the recipients in the three AHCCCS groups at issue would not "qualify as categorically eligible for Medicaid." Again this statement is true, but does not disturb, and is not in any way inconsistent with, the Board's finding that the Secretary's approval of Arizona's State plan included all the AHCCCS programs and sub-programs. While the AHCCCS patient groups at issue were not in

mandatory, categorically eligible Medicaid groups, each of those three AHCCCS groups met the requirements for optional Medicaid eligibility groups. Thus, as the Board found, they were "eligible" for medical assistance under a State Medicaid plan because they were capable of being included in such a plan if Arizona had made the election it is entitled to make under Federal law to include such optional Medicaid eligibility groups.[2] Administrative Record ("AR") 40; *see also* Pl. Mem. 25-27; Pl. Opp. & Reply 17-25.

Finally, the Secretary's Reply (at 5-6) also points to some statements appearing in some documents in the record (and other documents not in the record) that could be construed, he argues, to mean that the three AHCCCS groups at issue here were not part of a single, integrated program that is the Medicaid program in Arizona. While the snippets of evidence cited in the Secretary's Reply do not mean what the Secretary now argues they mean, that is all beside the point at this stage of proceedings. The salient points here are that the Board that heard all the evidence in this case found as a matter of fact that the Secretary's approval of Arizona's State plan included all the AHCCCS programs and sub-programs, and in his review of that decision, the Administrator did not take issue with that factual finding. Unquestionably, the Administrator reached a different legal conclusion – for a different reason – as to whether these patients were "eligible for Medicaid." The question before the Court, then, is whether the Administrator's conclusion is in accordance with law and is supported by substantial evidence

---

[2] To the extent relevant to this case, Arizona's election to include or not include optional Medicaid eligibility groups is no different than West Virginia's election, as discussed in *Cabell Huntington*, to limit the number days that it will pay for when inpatient hospital services are furnished to individuals in an optional eligibility group. *See Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984 (4th Cir. 1996); *see also* Pl. Opp. & Reply at 23-24. In either case, the individuals in an optional eligibility group are "eligible" for medical assistance, as defined by the Sixth Circuit in *Jewish Hospital*, because they are "capable of receiving federal medical assistance or Medicaid." *Jewish Hosp., Inc., v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 274 (6th Cir. 1994).

in the record, which includes the facts found by the Board. *See Morall v. DEA*, 412 F.3d 165, 176-77 (D.C. Cir. 2005). In an action like this for judicial review of a final agency decision based on the record compiled in a hearing required by statute, the role of the reviewing court is not to try facts, and when the final agency is unsupported by the evidence in the record compiled before the agency, the reviewing court must set it aside. *See* 5 U.S.C. § 706(2)(E); *Biloxi Reg'l Med. Ctr. v. Bowen*, 835 F.2d 345, 348-49 & n.13 (D.C. Cir. 1987).

In summary, the plain text of the Administrator's decision reveals the fallacy of the Secretary's belated argument in his Reply brief that the Administrator "clearly reversed the finding of the Board" that the Secretary's approval of Arizona's State plan included all the AHCCCS programs and sub-programs, Def. Reply at 4. That argument is simply unsupported by the record. And, thus, there can be no genuine issue that the three groups at issue here were eligible for Medicaid. *See* Pl. Mem. 17-18; Pl. Opp. & Reply 5-10. As stipulated below, and as the Secretary admitted in his Answer to the Complaint, "Arizona's Medicaid program is the Arizona Health Care Cost Containment System ('AHCCCS')." Complaint & Answer ¶ 50; Stipulations ¶ 4, AR 192. Accordingly, the patient days at issue must be included in the Plaintiff hospitals' disproportionate share hospital ("DSH") payment calculations because the three AHCCCS patient groups at issue were eligible for Medicaid.

## B.   Admissions and Stipulations

In another desperate attempt to avoid the inescapable conclusion the follows the undisputed facts in this case, the Secretary's Reply now attempts to repudiate both what he admitted in his Answer to the Complaint (¶ 50), *see* Def. Reply at 7, as well as the stipulations of fact entered into by his contracted agent, the Fiscal Intermediary. *Id.* at 6 n.3. As noted above, it was stipulated in the proceedings before the Secretary's review board that AHCCCS

is Arizona's Medicaid program.   AR 192.   In his review of the record in this case, the

Administrator of the agency did not overturn or even question that stipulated fact.  And, thus, in

his Answer to the Complaint (¶ 50), the Secretary admitted that "Arizona's Medicaid program

is the Arizona Health Care Cost Containment System ('AHCCCS')."  Only now, in his Reply,

the Secretary attempts to repudiate both the stipulation of fact and his own Answer to the

Complaint.

        Coming as it does only in the Secretary's Reply brief in this court - after the Plaintiff

filed its memorandum in support of its motion for summary judgment and its opposition to the

Secretary's motion and about four years after the stipulations were entered into in the

proceedings before the Board in 2004 – the Secretary's last-minute change of heart is simply

dirty pool.  As shown below, it also is contrary to law.

        The Secretary's own appeal regulations *require* that Medicare providers, like the

Plaintiff hospitals, along with the Secretary's fiscal intermediaries, attempt to join in written

stipulations as to facts that are not in dispute in proceedings before the Board.  42 C.F.R. §

405.1853(a) (requiring the provider and intermediary to "expeditiously attempt to join . . . in

written stipulations").  Moreover, the Secretary is bound by his own regulations, even if they

are "more rigorous than otherwise would be required."  *Morton v. Ruiz*, 415 U.S. 199, 235

(1974); *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954); *In re

Medicare Reimbursement Litig.* ("*Baystate*"), 309 F. Supp. 2d 89, 99 (D.D.C. 2004), *aff'd,* 414

F.3d 7 (D.C. Cir. 2005), *cert. denied,* 547 U.S. 1054 (2006); *Wilkinson v. Legal Servs. Corp.*,

27 F. Supp. 2d 32, 57-58 (D.D.C. 1998).  Accordingly, having adopted a regulation requiring

providers and intermediaries to join in written stipulations as to undisputed facts in proceedings

before the Board, the Secretary cannot later attempt to repudiate those stipulated facts in court,

and particularly not in a case like this in which neither the Board nor the Administrator took any issue with those stipulations.

The three cases the Secretary now invokes to escape the stipulations (Def. Reply at 6 n.3) do not contradict this point. None of those cases permitted the Secretary to repudiate a written stipulation as to an undisputed factual matter. In each of those cases, the court concluded that the Secretary is not bound by an intermediary's reading of the Secretary's regulations or the Medicare statute. In the first case the Secretary cites, for example, the stipulation at issue represented an intermediary's view as to a hospital's satisfaction of regulatory criteria for designation as a sole community hospital, and in the final agency decision in that case, the Administrator concluded that the data submitted by the hospital failed to establish that the agency had improperly denied sole community hospital status under the regulation. *Howard Young Med. Ctr., Inc. v. Shalala*, 207 F.3d 437, 441, 443 (7th Cir. 2000). The second case cited by the Secretary is a case in which the Supreme Court concluded that the Secretary cannot be estopped by an intermediary's misreading of published Federal regulations. *Heckler v. Cmty. Health Servs. of Crawford City*, 467 U.S. 51, 64-65 (1984). The third case stands for the unremarkable proposition that the Secretary is not bound by an intermediary's stated interpretation of the Medicare statute. *Appalachian Reg'l Healthcare, Inc. v. Shalala*, 131 F.3d 1050, 1053 n.4 (D.C. Cir. 1997).

As these cases make clear, federal courts have not bound the Secretary to an intermediary's stipulation as to a matter of law or agency policy. But none of the authorities relied upon by the Secretary sanction his belated effort in this case to repudiate in federal court the undisputed facts that were established in written stipulations entered into in proceedings before the Board pursuant to the Secretary's own appeal regulations in 42 C.F.R. §

405.1853(a).  This is especially so when, as in this case, the agency's final decision in the administrative appeal process did not take issue with those facts.  As noted in the Plaintiff's last brief (Pl. Opp. & Reply at 7-8), while the Administrator may review the Board's findings of fact, he may not reverse the Board's factual findings unless they are unsupported by substantial evidence in the record.[3]  42 C.F.R. § 405.1875(c)(2).

## II. MEDICAID DSH PAYMENTS MADE BY AHCCCS FOR THE COSTS OF HOSPITAL SERVICES FURNISHED TO PATIENTS IN THE AHCCCS GROUPS AT ISSUE WERE "MEDICAL ASSISTANCE" AS DEFINED IN THE MEDICAID STATUTE AND AS PREVIOUSLY CONSTRUED BY THE AGENCY IN ITS 2002 LETTER TO ALL STATE MEDICAID DIRECTORS

Both in its Complaint (¶¶ 2, 36, 59, 62) and in its opening brief (Pl. Mem. at 22-25), Plaintiff asserted that the AHCCCS patient groups at issue were not only eligible for, but actually received, medical assistance under the AHCCCS program through, and by virtue of, the Medicaid DSH payments made directly to hospitals by the AHCCCS program for the costs of inpatient hospital services furnished to these patients.  Plaintiff further asserted in the Complaint and in Plaintiff's opening brief that CMS has previously construed the apposite provisions of the Medicaid statute in precisely the same fashion, and that agency interpretation was expressed in a 2002 letter to all State Medicaid Directors regarding federal statutory provisions that would prohibit a State from including the costs of services furnished to State prison inmates in the Medicaid DSH payment calculation.[4]

---

[3] *See also East Tennessee Natural Gas Co. v. FERC*, 953 F.2d 675, 681 (D.C. Cir. 1992) ("Because the ALJ relied on substantial evidence in the record, coupled with a well-reasoned and highly sensible analysis . . . , we can find no basis upon which to accept the Commission's unsupported and ill-reasoned conclusion to the contrary."); *Morall*, 412 F.3d at 167, 180 (D.C. Cir. 2005) (an agency's findings of fact cannot be upheld if the final decision departs from the fact findings by the administrative tribunal that heard the evidence directly without considering contradictory evidence and the credibility findings of the tribunal that heard the evidence).

[4] A copy of the 2002 letter is attached to the Secretary's Answer.

CMS' 2002 letter (at 1-2) advised States that they cannot include the costs of services furnished to State prison inmates in the Medicaid DSH payment calculation. CMS explained that by including the costs of these services in the Medicaid DSH payment, a State would be furnishing medical assistance to these wards of the State, and the federal Medicaid statute prohibits the payment of federal matching funds ("FFP") for medical assistance furnished to "inmates of public institutions."

CMS' interpretation of the Medicaid statute's definition of "medical assistance" in its 2002 letter, and the inconsistency between that interpretation the Administrator's decision in this case, were asserted in the Complaint (¶¶ 36, 62) and in Plaintiff's opening brief (Pl. Mem. at 24-25). Nevertheless, the Secretary's first brief said nothing about CMS' 2002 letter or the alleged inconsistency between the Secretary's interpretation of the Medicaid statue in that letter and the Administrator's decision in this case.

The Secretary's Reply brief now asserts wholesale new arguments concerning CMS' 2002 letter. Def. Reply at 10-13. Quoting extensively from part of the first paragraph of that letter and the entirety of two other paragraphs, Def. Reply at 11 n.10, the Secretary states incorrectly that the 2002 letter "makes none of the statements plaintiff asserts it does." *Id.* at 10. It is true that the paragraphs that are selectively quoted in footnote 10 of the Secretary's Reply and discussed at some length on pages 11-12 of his Reply do not contain the statements that Plaintiff relied upon in its prior briefs. Those selective excerpts from CMS' 2002 letter, however, do not concern the portion of the letter that Plaintiff addressed in its Complaint and in

its opening brief.[5]   The relevant portion of CMS' 2002 letter, which is neither quoted nor acknowledged in the Secretary's Reply, states as follows:

> Section 1923(g) of the Social Security Act [42 U.S.C. § 1396r-4(g)] establishes a hospital-specific [Medicaid] DSH limit.  It limits Medicaid payments to the costs incurred during the year of furnishing hospital services by the hospital to individuals who are either eligible for medical assistance under the State plan or have no health insurance or source of third party coverage for services provided during the year.  Inmates of correctional facilities are wards of the State.  As such, the State is obligated to cover their basic economic needs . . . .  Therefore, because these individuals have a source of third party coverage, they are not uninsured, and the State cannot make [Medicaid] DSH payments to cover the cost of their care.

> *Further, this conclusion is consistent with [the definition of "medical assistance" in] Section 1905(a) of the Social Security Act* [42 U.S.C. § 1396d(a)] *and the regulations at 42 CFR 435.1008 and 435.1009, which prohibit [federal financial participation ("FFP")] for services, provided to inmates of public institutions.  To read section 1923(g) of the Social Security Act to permit additional DSH payments for the costs of prisoner care would directly conflict with this statutory prohibition*, and effectively render the statutory prohibition meaningless.  (Emphasis added.)

In other words, and as Plaintiff explained in its opening brief (Pl. Mem. at 24-25), in the 2002 letter to State Medicaid Directors, CMS concluded that a State cannot include the costs of services furnished to prisoners in the calculation of the Medicaid DSH payment.  As CMS' 2002 letter further explained, inclusion of these costs in the Medicaid DSH payment would entail the provision of the "medical assistance" under the Medicaid State plan, as defined in the Medicaid statute.  Moreover, the 2002 letter noted that the Medicaid statute's definition of "medical assistance" in section 1905(a) of the Social Security Act, 42 U.S.C. § 1396d(a), prohibits the payment of Federal Medicaid matching funds for medical assistance furnished to inmates of public institutions.

---

[5] Unlike the other, inapplicable portions of the letter selectively quoted and discussed in the Secretary's Reply (at 11-12), the portion of the letter that Plaintiff relies upon is unrelated to the Benefits Improvement and Protection Act of 2000, and applies equally to periods before and after the January 1, 2001 effective date of that statutory provision.

By the same token, then, it follows that the Medicaid DSH payments made by the AHCCCS program for the costs of inpatient hospitals services furnished to the individuals in the three AHCCCS eligibility groups at issue were "medical assistance" under the State plan, as defined in section 1905(a) of the Medicaid statute, 42 U.S.C. § 1396d(a). Accordingly, under the agency's prior established interpretation of the statutory definition of "medical assistance," it follows that the AHCCCS patient groups at issue here were receiving medical assistance under the Arizona statute in the form of the Medicaid DSH payments made by AHCCCS for the costs of inpatient hospital services furnished to those patients. But nothing in the Secretary's final decision in this case or in either of his briefs in this action provides a rational explanation for the inconsistency between the Secretary's decision in this case and his contrary interpretation of the Medicaid statute in the CMS' 2002 letter to all State Medicaid Directors. That is the very hallmark of arbitrary and capricious agency action, and the Administrator's decision in this case, therefore, should be reversed. *See Nat'l Treasury Employees Union v. Fed. Labor Relations Auth.*, 399 F.3d 334, 337 (D.C. Cir. 2005) (no deference is owed to an agency policy that has been erratically and inconsistently applied); *Michigan Pub. Power Agency v. FERC*, 405 F.3d 8, 16 (D.C. Cir. 2005) (an agency's unexplained departure from its established precedent is not entitled to deference).

The Secretary's Reply (at 12) also raises further new arguments, however, based on another provision of the Medicaid DSH statute, 42 U.S.C. § 1396r-4(c)(3)(B), that permits a State to calculate DSH payments by including costs of services furnished to "low-income patients" who are not otherwise eligible to receive medical assistance under the State plan. But, the Secretary's new argument begs the obvious question - whether the provision of the Medicaid DSH statute that authorizes a State to include "low-income patients" in the Medicaid

DSH payment calculation likewise authorizes the State to furnish "medical assistance" to such low-income patients, who otherwise are not receiving medical assistance under the State plan, by including them in the Medicaid DSH payment. Following the statutory interpretation expressed in CMS' 2002 letter, the answer to that question is yes, for the reasons discussed above. And this is also consistent with the Secretary's stated construction of other analogous provisions of the Medicaid statute.

The *Pharmaceutical Research* case[6] discussed in Plaintiff's opening brief (Pl. Mem. at 20-22) and in the Secretary's Reply (at 10 n.8) involved the Secretary's interpretation of one such analogous provision of the Medicaid statute. The issue in that case was whether "State-only" payments made for drugs furnished to certain individuals, without federal matching funds, may be considered to be payments "made under the [Medicaid] State plan," for purposes of the Medicaid prescription drug rebate requirement set forth in 42 U.S.C. § 1396r-8(b)(1)(A). *See* 191 F. Supp. 2d at 53-54. After having approved the State's program, the Secretary took the position before this Court that the State-only funded payments for prescription drugs were "made under the State plan," regardless of whether Federal matching funds were paid. *Id*. at 54-55. And, in adopting that position, the Secretary necessarily had to consider those prescription drug payments to have been made for individuals who were, by virtue, eligible for Medicaid prescription drug benefits. There is simply no authority in the Federal Medicaid statute for a State to make payments under an approved Medicaid State plan for items or services furnished to individuals who are not considered to be eligible for some Medicaid benefit.

---

[6] *Pharmaceutical Research & Mfrs. of Am. v. Thompson*, 191 F. Supp. 2d 48 (D.D.C.), *rev'd on other grounds,* 313 F.3d 600 (D.C. Cir. 2002).

Similarly, as Plaintiff has explained before, there is no statutory authority for the Secretary to pay Federal matching funds for State expenditures to provide medical services to individuals unless those payments are "medical assistance" under the State Medicaid plan. *See* Pl. Mem. at 23; Pl. Opp. & Reply at 13. Thus, because there is no dispute that Arizona received Federal matching funds the Medicaid DSH payments made by AHCCCS for the costs of inpatient hospital services furnished to the three AHCCCS patient groups at issue, the Secretary cannot credibly say that those patients were not receiving "medical assistance" under the Medicaid State plan.

### III.  THE SECRETARY CANNOT RELY ON CMS' QUESTIONS AND ANSWERS TO INTERMEDIARIES TO DENY THE HOLD-HARMLESS PAYMENTS TO WHICH PLAINTIFF IS ENTITLED UNDER THE PLAIN LANGUAGE OF THE HOLD-HARMLESS RULE ESTABLISHED IN PROGRAM MEMORANDUM A-99-62

In our opening brief (Pl. Mem. at 27-30), Plaintiff argued that the Administrator's denial of a hold-harmless payment for the years issue is contrary to the plain language of the hold-harmless rule established in Program Memorandum A-99-62 because one part of the two-part rule provides for payment to a hospital that previously received payment for a type of day in prior cost reporting periods beginning before January 1, 2000. In his opposition (Def. Mem. at 40-44), the Secretary asserted that Plaintiff is not entitled to a hold-harmless payment because the Plaintiff hospitals did not appeal this issue to the PRRB before October 15, 1999 and did not have an expectation of receiving such payment. In our reply (Pl. Opp. & Reply at 25-29), Plaintiff responded that the Secretary's argument impermissibly collapses the two-part hold-harmless provision into a one-part rule while substituting the Secretary's purported rationale for the rule in place of its plain language. Now, in his last brief (Def. Reply at 17-19), the Secretary purports to rely on a later, unpublished document that addressed Questions and

Answers to Intermediaries relating to the hold-harmless rule established in Program Memorandum A-99-62.

The Secretary's Reply boldly asserts that "Plaintiff cannot reasonably deny that Question and Answer 16 is part of the Secretary's Hold Harmless policy, and his findings are consistent with it." Def. Reply at 18. Not true. Further, as shown below, the Secretary's reliance on the Questions and Answers document to disallow the hold-harmless payments to which Plaintiff is entitled under the plain language of the rule itself is contrary to law.

CMS issued Program Memorandum A-99-62 on December 1, 1999, and distributed to its Medicare fiscal intermediaries "Questions and Answers Related to Program Memorandum A-99-62" ("Q&A") only later. (AR 401; AR 733). Unlike Program Memorandum A-99-62, which was included in the Secretary's publication in the Federal Register of agency rules, guidance and policy statements, 67 Fed. Reg. 43762, 43765 (June 28, 2002), the Q&A for intermediaries was never published anywhere and was never listed in the Federal Register. Accordingly, under the controlling law in this Circuit, the Secretary may not rely upon the guidance to Medicare fiscal intermediaries that was set forth in the Q&A document to disallow the hold-harmless payments to which Plaintiff is entitled under Program Memorandum A-99-62. *Chippewa Dialysis Servs. v. Leavitt*, 511 F.3d 172, 176-78 (D.C. Cir. 2007) (holding that the Medicare Act prohibits the Secretary from relying upon a standard that was not published in the Federal Register).

The Medicare statue requires the Secretary to "publish in the Federal Register, not less frequently than every 3 months, a list of all manual instructions, interpretative rules, statements of policy, and guidelines of general applicability." 42 U.S.C. § 1395hh(c)(1). Program Memorandum A-99-62 was published in the Federal Register as required by statute. 67 Fed.

Reg. 43762, 43765 (June 28, 2002).  The Q&A was never published anywhere, however, and was not included in any list published in the Federal Register of "all manual instructions, interpretative rules, statements of policy, and guidelines of general applicability."  42 U.S.C. § 1395hh(c)(1).  The Secretary, therefore, is precluded from relying on the Q&A document to support his denial of a hold-harmless payment to Plaintiff under Program Memorandum A-99-62.  *See Chippewa Dialysis Servs.*, 511 F.3d at 176-78.

But, even if CMS' Q&A for intermediaries had been published in the Federal Register, and it was not, the Secretary's reliance on that later document to effect the denial of hold-harmless payments required by the plain language of the Program Memorandum would still be contrary to law.  Although, as an interpretative rule or general statement of policy that recognizes an exemption, Program Memorandum A-99-62 itself was not subject to the notice and comment rulemaking procedure prescribed by the Administrative Procedure Act, *see* 5 U.S.C. § 553, the Secretary was required to invoke the notice and comment rulemaking procedure in any subsequent amendment to the hold harmless rule.  *See, e.g., Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813-14 (D.C. Cir. 2001); *Alaska Prof'l Hunters Ass'n. v. Fed. Aviation Admin.,* 177 F.3d 1030, 1033-34 (D.C. Cir.1999); *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 586 (D.C. Cir. 1997).  Thus, to the extent that the Secretary relies upon the Q&A to support denial of the hold harmless payment to which Plaintiff is entitled under the plain language of Program Memorandum A-99-62, that later document is a procedurally invalid amendment to the hold harmless rule established in A-99-62.

## IV.    CONCLUSION

For all the foregoing reasons, and the reasons set forth in Plaintiff's prior briefs, we respectfully request that the Court grant Plaintiff's motion for summary judgment and deny the Secretary's cross-motion.

Respectfully submitted,

/s/ Stephanie A. Webster
Stephanie A. Webster
  DC Bar No. 479524
Christopher L. Keough
  DC Bar No. 436567
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
(202) 639-6500 (phone)
(202) 639-6604 (fax)

Counsel for Plaintiff

April 22, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BANNER HEALTH,                                )
                                              )
                    Plaintiff,                )          No. 1:07-cv-1614 (RBW)
                                              )
        v.                                    )
                                              )
MICHAEL O. LEAVITT,                           )
Secretary, United States Department           )
of Health and Human Services,                 )
                                              )
                    Defendant.                )

**PROPOSED ORDER**

Upon consideration of Plaintiff's Motion to Strike and for Leave to File a Sur-Reply to

Defendant's Reply in Support of His Motion for Summary Judgment [Doc. No. 27], and

Defendant's response thereto, it is hereby:

**ORDERED** that Plaintiff's motion to strike is **GRANTED**; and it is

**FURTHER ORDERED** that the Clerk of this Court is directed to strike Defendant's

Reply in Support of His Motion for Summary Judgment and the attachments thereto filed with

the Court on April 16, 2008 [Doc. No. 27]; and it is

**FURTHER ORDERED** that Defendant shall have 3 days to re-file his Reply in Support

of His Motion for Summary Judgment without the attachments that were appended to the Reply

that was filed with the Court on April 16, 2008, and without any references to or discussion of

the attachments to the Reply brief originally filed on April 16, 2008; and it is

**FURTHER ORDERED** that Plaintiff's motion for leave to file a sur-reply is

**GRANTED**; and it is

**FURTHER ORDERED** that the Clerk shall file the proposed sur-reply that is attached to Plaintiff's Motion to Strike and for Leave to File a Sur-Reply to Defendant's Reply in Support of His Motion for Summary Judgment.

_____
United States District Judge